IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge Christine M. Arguello

Civil Action No. 21-cv-01905-CMA-MDB

LAURA CIMINO, and
JOSEPH ROTHMAN,

      Plaintiffs,

v.

STATE FARM FIRE AND CASUALTY COMPANY,

      Defendant.

---

### ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

---

This matter is before the Court on Plaintiffs Laura Cimino and Joseph Rothman's Renewed Motion for Partial Summary Judgment. (Doc. # 56.) For the following reasons, the Court grants in part and denies in part the Motion.

### I.    BACKGROUND

This is an insurance coverage action regarding hail damage that occurred to Plaintiffs' home in Colorado Springs. Unless otherwise indicated, the following material facts are undisputed.

Defendant State Farm Fire and Casualty Company ("State Farm") issued an insurance policy, Policy Number 06-CX-P668-1, to Plaintiffs with effective dates of June 4, 2018, through June 4, 2019 ("Policy"). (Doc. # 56-1 at 1.) The Policy provides coverage for accidental direct physical loss caused by hail to Plaintiffs' property located

in Colorado Springs, Colorado ("Property"), subject to the terms and conditions of the Policy. (*Id.* at 16–23.) It includes an appraisal provision in the event that the parties cannot agree on the amount of loss:

> 4. **Appraisal**. If *you* and *we* fail to agree on the amount of loss, either party can demand that the amount of the loss be set by appraisal. Only *you* or *we* may demand appraisal. A demand for appraisal must be in writing. **You** must comply with **SECTION I – CONDITIONS, Your Duties After Loss** before making a demand for appraisal. At least 10 days before demanding appraisal, the party seeking appraisal must provide the other party with written, itemized documentation of a specific dispute as to the amount of the loss, identifying separately each item being disputed.
>
> a. Each party will select a competent, disinterested appraiser and notify the other party of the appraiser's identity within 20 days of receipt of the written demand for appraisal.
>
> b. The appraisers will then attempt to set the amount of the loss of each item in dispute as specified by each party, and jointly submit to each party a written report of agreement signed by them. In all instances the written report of agreement will be itemized and state separately the ***actual cash value***, replacement cost, and if applicable, the market value of each item in dispute.
>
> The written report of agreement will set the amount of the loss of each item in dispute and will be binding upon *you* and *us*.
>
> c. If the two appraisers fail to agree upon the amount of the loss within 30 days, unless the period of time is extended by mutual agreement, they will select a competent, disinterested umpire and will submit their differences to the umpire. . . .
>
>> (3) A written report of agreement, as required in item b., signed by any two (appraisers or appraiser and umpire) will set the amount of the loss of each item in dispute and will be binding upon *you* and *us*. In all instances the written report of agreement will be itemized and state separately the ***actual cash value***, replacement cost, and if applicable, the market value of each item in dispute.

(*Id.* at 25–26.) To qualify as an appraiser or umpire, a person must be (1) an engineer or architect with experience and training in building construction, repair, estimating, or investigation of the type of property damage in dispute; (2) an adjuster or public adjuster with experience and training in estimating the type of property damage in dispute; or (3) a contractor with experience and training in the construction, repair, and estimating of the type of property damage in dispute. (*Id.* at 26.)

The Policy also includes the following limitations and reservation of rights with respect to the appraisal provision:

> g. **You** and **we** do not waive any rights by demanding or submitting to an appraisal, and retain all contractual rights to determine if coverage applies to each item in dispute.
>
> h. Appraisal is only available to determine the amount of the loss of each item in dispute. The appraisers and the umpire have no authority to decide:
>
>  (1) any other question of fact;
>  (2) questions of law;
>  (3) questions of coverage;
>  (4) other contractual issues; or
>  (5) to conduct appraisal on a class-wide basis.

(*Id.* at 26–27.)

On August 6, 2018, Plaintiffs' Property suffered accidental direct physical loss caused by a hail and wind storm. (Doc. # 56 at 8; Doc. # 64 at 4.) Plaintiffs reported the loss to State Farm and provided an itemized estimate of the amount of loss totaling $428,335.79. (Doc. # 56-3 at 183–95.) After State Farm investigated the loss, it determined the amount of loss caused by the storm to be $172,995.59 ("December 12, 2019 estimate")—significantly less than Plaintiffs' estimate. (Doc. # 56-2 at 94–95.)

Among other disputes as to the amount of loss caused by the storm, the parties disagreed as to whether stucco damage could be fixed by repairing damage around the window or whether a larger repair was required to maintain continuous structural integrity and "matching" of the stucco of the Property. *See* (Doc. # 56 at 9.) State Farm requested that Plaintiffs attempt the repair on a larger area so that State Farm could review the repair to determine if Plaintiffs' concern about matching was addressed. (Doc. # 64-1 at 33.) However, Plaintiffs instead removed and replaced all of the stucco on their home during the week of January 13, 2020. (*Id.*) The parties dispute whether the matching concerns would have been resolved if the repair had been attempted on a larger section of stucco. (Doc. # 56 at 15; Doc. # 64 at 5.)

On February 26, 2020, Plaintiffs provided State Farm with a written demand that the disputed amount of loss be set by appraisal. (Doc. # 56-2 at 160.) State Farm responded by letter on March 4, 2020, and agreed to participate in the appraisal. (*Id.* at 160–61.) However, State Farm stated that its agreement was limited to "the damaged items for which we have admitted liability" and maintained that "appraisal is not suited for repairs that have been completed." (*Id.* at 161.) State Farm advised Plaintiffs that "[w]ith respect to any repair or replacement of property that falls outside the scope for which we have admitted liability as outlined by our [December 12, 2019] estimate, we reserve our right to exclude those costs from any appraisal award or payment based on this award." (*Id.*) Accordingly, State Farm made clear that it reserved all of its rights under the Policy and that it intended to timely pay an appraisal award for covered

4

damage, but it would not pay any amount awarded for damage not covered by the Policy. (*Id.* at 164.)

State Farm selected Joel Furnace, an independent insurance appraiser, to serve as its appraiser, while Plaintiffs selected Trevor Karas, a public insurance adjuster. (Doc. # 56 at 10.) When the two appraisers were unable to agree as to the amount of loss of some of the items in dispute, they selected an umpire, Christian Weis, and submitted their differences to the umpire. (*Id.*) The parties dispute several material facts relating to Mr. Weis's qualifications, background, experience, and training. *Compare* (Doc. # 56 at 11), *with* (Doc. # 64 at 7, 10–14), *and* (Doc. # 67 at 3–6). It appears undisputed that Mr. Weis testified that he did not consider causation in reaching the appraisal award. (Doc. # 64 at 15; Doc. # 67 at 6.)

On or about March 4, 2021, the appraisal panel issued an appraisal award that determined the replacement cost value amounted to $275,977.69. (Doc. # 56-2 at 137.) The replacement cost value of the appraisal award is $102,982.09 higher than the total amount included on State Farm's December 12, 2019 estimate. (Doc. # 56 at 12; Doc. # 64 at 8.) State Farm's appraiser, Mr. Furnace, was in agreement as to all line items of the appraisal award except items 139–152, which were agreed upon by Mr. Karas and Mr. Weis. (Doc. # 56-2 at 137.)

On May 7, 2021, State Farm provided a letter to Plaintiffs acknowledging its receipt of the appraisal award. (Doc. # 56-2 at 167.) State Farm informed Plaintiffs that it was issuing payment in the amount of $36,589.76, which was the amount of the appraisal award, less prior payments, the deductible, and items not "recoverable or

5

owed" pursuant to the terms of the Policy. (*Id.* at 167–68.) State Farm advised Plaintiffs that there was a "coverage question whether additional portions of the premises sustained accidental direct physical loss beyond those allowed in the State Farm estimate" and reiterated that it had agreed to appraisal "only with respect to portions of the property which had not already been repaired." (*Id.*)

Plaintiffs initiated this case in state court on June 10, 2021 (Doc. # 5), and State Farm removed the action to federal court (Doc. # 1). In their Complaint, Plaintiffs assert four claims for relief: (1) declaratory relief that State Farm is obligated to provide insurance for benefits for the amount of loss set by the appraisal in the appraisal award; (2) breach of contract; (3) statutory unreasonable delay and denial of benefits pursuant to Colo. Rev. Stat. §§ 10-3-1115 and -1116; and (4) common law bad faith.

On December 30, 2021, Plaintiffs filed a Motion for Partial Summary Judgment on their first claim for declaratory relief. (Doc. # 26.) In response, State Farm filed a Rule 56(d) Motion requesting that the Court deny without prejudice Plaintiffs' Motion for Partial Summary Judgment or defer ruling pending needed discovery. (Doc. # 33.) The Court issued an Order on July 19, 2022, granting State Farm's Rule 56(d) Motion and denying without prejudice Plaintiffs' Motion for Partial Summary Judgment pending further discovery. (Doc. # 52.)

Plaintiffs filed the instant Renewed Motion for Partial Summary Judgment on October 4, 2022. (Doc. # 56.) Therein, Plaintiffs request that the Court determine "whether the appraisal provision of the insurance policy limits an appraisal of the amount of loss to only those portions of the property which had not already been

repaired prior to the appraisal" and whether "the full amount of loss determined by the appraisal award is binding upon the Parties." (*Id.* at 3, 20.) State Farm filed a Response (Doc. # 64), and Plaintiffs filed a Reply (Doc. # 67). In addition, the Court granted State Farm leave to file a Sur-reply, which it submitted on January 2, 2023. (Doc. # 72).

## II.  LEGAL STANDARD

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it is essential to the proper disposition of the claim under the relevant substantive law. *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001). A dispute is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee, Okla.*, 119 F.3d 837, 839 (10th Cir. 1997). When reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. *See id.* However, conclusory statements based merely on conjecture, speculation, or subjective belief do not constitute summary judgment evidence. *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact and entitlement to judgment as a matter of law. *Id.* In attempting to meet this standard, a movant who does not bear the ultimate burden of persuasion at trial does not need to disprove the other party's claim; rather, the movant need simply point out to the Court a lack of evidence for the other party on an essential

element of that party's claim. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).

Once the movant has met its initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). The nonmoving party may not simply rest upon its pleadings to satisfy its burden. *Id.* Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Adler*, 144 F.3d at 671. Stated differently, the party must provide "significantly probative evidence" that would support a verdict in his favor. *Jaramillo v. Adams Cnty. Sch. Dist. 14*, 680 F.3d 1267, 1269 (10th Cir. 2012). "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Adler*, 144 F.3d at 671.

### III.  DISCUSSION

Plaintiffs seek summary judgment on two matters they assert are relevant to their first claim for declaratory relief: (1) whether the appraisal provision of the Policy allows the parties to complete an appraisal of portions of covered property which have already been repaired prior to the appraisal; and (2) whether the full amount of loss determined by the appraisal panel is binding upon the parties. (Doc. # 56 at 20.) The Court will address each issue in turn.

In a diversity case such as this, the Court applies Colorado law and interprets insurance policies as a Colorado court would. *Leprino Foods Co. v. Factory Mut. Ins. Co.*, 453 F.3d 1281, 1286 (10th Cir. 2006). Under Colorado law, "[i]nsurance policies

are subject to contract interpretation." *Bailey v. Lincoln Gen. Ins. Co.*, 255 P.3d 1039, 1050 (Colo. 2011). The primary goal of contract interpretation is to determine and effectuate the intent and reasonable expectations of the parties. *Copper Mountain, Inc. v. Indus. Sys., Inc.*, 208 P.3d 692, 697 (Colo. 2009). Policy provisions that are clear and unambiguous should be enforced as written. *Chacon v. Am. Family Mut. Ins. Co.*, 788 P.2d 748, 750 (Colo. 1990).

Plaintiffs first argue that the plain and unambiguous language of the Policy's appraisal provision permits the appraisal panel to determine the amount of loss of the portions of the property which have been repaired prior to the appraisal. (Doc. # 56 at 13.) There does not appear to be any genuine dispute as to this first contention: State Farm does not argue that appraisal is disallowed for repaired items, and the Court has not identified any language in the Policy precluding appraisal of the amount of loss of items in dispute that have already been repaired. *See generally* (Doc. # 64.) The Court therefore grants State Farm's Motion with respect to the narrow question of whether the Policy permits appraisal for repaired items. State Farm argues, however, that the matter is immaterial as to whether Plaintiffs may prevail on their first claim for declaratory relief because the central issue in this case is one of *coverage*, not *amount of loss*. The Court agrees with State Farm.

An appraisal provision is intended to provide a "plain, speedy, inexpensive and just determination of the extent of the loss." *Auto-Owners Ins. Co. v. Summit Park Townhome Ass'n*, 100 F. Supp. 3d 1099, 1103 (D. Colo. 2015) (quoting 46A C.J.S. Insurance § 1889 (2015)). However, appraisal "establishes only the **amount** of a loss

and not liability for the loss under the insurance contract." *Auto-Owners Ins. Co. v. Summit Park Townhome Ass'n*, 129 F. Supp. 3d 1150, 1153 (D. Colo. 2015) (emphasis added) (quoting *Minot Town & Country v. Fireman's Fund Ins. Co.*, 587 N.W.2d 189, 190 (N.D. 1998)). In other words, while appraisal may resolve certain factual issues by confirming the value of the property, an appraisal award is not dispositive of relief because "whatever the amount of the loss, other parts of the policy or applicable law could limit coverage or preclude it altogether." *Id.* at 1154; *see Summit Park*, 100 F. Supp. 3d at 1103 ("The parties may still dispute coverage issues after the appraisal process has been completed . . . . legal determinations, including regarding coverage, are clearly outside the scope of the appraisal process."); *see also Hometown Community Ass'n, Inc. v. Philadelphia Indemnity Ins. Co.*, No. 17-cv-00777-RBJ, 2017 WL 6335656, at *4 (D. Colo. Dec. 12, 2017) ("Appraisal awards are binding as to items within the scope of the appraisal but not as to items outside that scope.").

The language of the Policy in the instant case reflects these principles. The appraisal provision plainly states that State Farm "do[es] not waive any rights by demanding or submitting to an appraisal" and that the parties "retain all contractual rights to determine if coverage applies to each item in dispute." (Doc. # 56-1 at 26.) Further, the Policy expressly provides that appraisal "is only available to determine the amount of the loss of each item in dispute" and that the appraisers and the umpire have no authority to decide "questions of coverage" and "other contractual issues." (*Id.* at 27.) As such, State Farm is correct that regardless of whether the appraisal award is binding

as to the *value* of repaired items, State Farm is not obligated to pay the amount of the award relating to those items if they are not covered under the Policy. (Doc. # 64 at 16.)

In their briefing, Plaintiffs repeatedly confuse issues of coverage with amount of loss. For example, in their Reply, Plaintiffs state that they "seek a declaration that neither Party may unilaterally reduce the amount of loss determined by the appraisal panel, **until and unless**, the Parties obtain a determination that the appraisal panel did not perform the duties required of them by the Policy." (Doc. # 67 at 8–9.) In so arguing, Plaintiffs characterize State Farm's refusal to pay the full appraisal award as State Farm unilaterally "restricting or reducing the amount of loss determined by the appraisal panel." (*Id.* at 10.) The Court finds no merit in this argument. State Farm acknowledges that an appraisal panel can set the value for items in dispute under the Policy, but State Farm contends—correctly—that coverage is an issue for the Court. By refusing to pay items in the appraisal award for which it has not conceded liability, State Farm did not unilaterally change or limit the award; it instead acted within its rights under the Policy to contest coverage for the disputed items.

Several roadblocks impede Plaintiffs' second request for partial summary judgment on whether the amount of loss determined by the appraisal panel is binding upon the Parties. First, State Farm argues that the appraisal panel did not address causation and therefore did not determine the "amount of loss" because, "in the insurance context, the ordinary meaning of the phrase 'amount of loss' encompasses causation." *BonBeck Parker, LLC v. Travelers Indemnity Co. of Am.*, 14 F.4th 1169, 1178 (10th Cir. 2021). State Farm cites Mr. Weis's testimony and asserts as an

11

undisputed fact that "Weis testified he did not consider causation in reaching the appraisal award." (Doc. # 64 at 15.) Plaintiffs, in their Reply, concede: "Admitted, but immaterial to resolution of the issues in Plaintiffs' Motion." (Doc. # 67 at 5.) The Court disagrees that the undisputed fact is "immaterial." If the appraisal panel did not consider causation, then the appraisal panel did not address whether any of the disputed items constituted loss *caused by* the storm and are therefore potentially subject to coverage under the Policy. *See BonBeck*, 14 F.4th at 1179. An appraisal panel that provides only a valuation of several disputed items relating to the property, separate and apart from the issue of causation by the storm, does not determine the "amount of **loss**." As such, the Court agrees with State Farm that Plaintiff is not entitled to summary judgment at this juncture on whether the full amount of loss determined by the appraisal panel is binding upon the parties.

Summary judgment is also not appropriate because State Farm has presented a genuine dispute of material fact as to whether Mr. Weis was competent and/or qualified to serve as umpire. If Mr. Weis was not competent or qualified, the appraisal award may be subject to *vacatur*. *See, e.g.*, *Copper Oaks Master Home Owners Ass'n v. Am. Family Mut. Ins. Co.*, No. 15-cv-01828-MSK-MJW, 2018 WL 3536324, at *18 (D. Colo. July 23, 2018). The genuine disputes of material fact precluding summary judgment include, but are not limited to:

- whether Weis had adequate training or experience related to "the type of property damage in dispute," particularly construction repair involving stucco and windows;

- how many years of experience Mr. Weis has in construction;
- whether Weis was qualified to serve as an umpire based on a disputed number of years of construction experience and/or relevant experience in contracting or estimation work involving stucco; and
- whether Weis has a disqualifying criminal history.

In light of these genuine disputes of material fact, Plaintiffs are not entitled to summary judgment on the issue of whether the appraisal award is binding upon the parties as to the amount of loss.

## IV.   CONCLUSION

For the foregoing reasons, it is ORDERED as follows:

- Plaintiff's Renewed Motion for Partial Summary Judgment (Doc. # 56) is GRANTED IN PART and DENIED IN PART. It is GRANTED as to the narrow question of whether the Policy permits appraisal of repaired items. It is DENIED in all other respects.

DATED: April 21, 2023

BY THE COURT:

CHRISTINE M. ARGUELLO
Senior United States District Judge